IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CASEY L. BARTLETT                                                                      PLAINTIFF

vs.                                           No. 04-2210

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration
                                                                       DEFENDANT

## MEMORANDUM OPINION

Casey L. Bartlett (hereinafter "Plaintiff") has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her claim for a period of disability and disability insurance benefits (hereinafter "DIB"), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423*, and for Supplemental Security Income benefits (hereinafter "SSI") under *§ 1602 of Title XVI, 42 U.S.C. § 1381a.*

Plaintiff was 26 years of age at the time of the administrative hearing. She has a high school education. (T. 216) Plaintiff alleges that she is disabled by virtue of a history of seizure disorder. (T. 64)

Plaintiff's applications for benefits were filed on April 9, 2003. (Doc. 54-56, 199-201) Her applications were denied originally and upon reconsideration. (T. 26-27, 202-03, 34-35, 208-09) A hearing was conducted on February 23, 2004 (T. 210-50), before an Administrative Law Judge (hereinafter "ALJ"). Plaintiff was represented by counsel at the hearing.

By written decision dated May 28, 2004, the ALJ found that Plaintiff became eligible for

Disability Insurance Benefits on October 1, 1996, and met the disability insured status requirements of the Act through the date of the decision; she has not engaged in substantial gainful activity since March 18, 2003; that she suffers from epilepsy and an upper limb fracture which are considered "severe"; she does not have an impairment or combination of impairments that meet or equal the criteria of any of the impairments listed in *Appendix 1, Subpart P, Regulations No. 4* (the "Listings"); Plaintiff's subjective allegations regarding her limitations were found to be not totally credible; she has the residual functional capacity (RFC) to perform work at the medium level of exertion, limited to occasional pushing and pulling with the right dominant arm; and, she is restricted from driving, exposure to dangerous moving machinery, and hazards such as ropes, ladders, and scaffolds. Further, utilizing the testimony of a vocational expert (VE) the ALJ found that Plaintiff's impairments do not prevent her from performing her past relevant work as a certified nurse's assistant and cashier/checker. (T. 18-19) Accordingly, it was found that Plaintiff was not under a disability at any time through the date of the decision. (T. 19)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision, by notice dated July 31, 2004. (T. 3-5) Accordingly, Plaintiff filed this action.

Both Plaintiff and the Commissioner have filed appeal briefs and this case is now ready for decision. Plaintiff contends that: the ALJ failed to develop the record by requesting additional information from Plaintiff's treating physician with respect to Plaintiff's seizure disorder; the ALJ's RFC determination is not supported by substantial evidence in the record as a whole and thus the hypothetical posed to the VE was improper; the ALJ did not properly set forth the RFC of Plaintiff's past relevant work in the hypotheticals; the ALJ made an improper credibility assessment; and, the ALJ improperly disregarded medical opinions. (Doc. # 10)

**Discussion:**

Consideration of a social security disability claim involves a five step evaluation process. *20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI)*. As noted above, the ALJ found that although Plaintiff's impairments are severe, they do not meet or equal a listed impairment. *20 C.F.R. § 404.1520(d) (DIB); 20 C.F.R. § 416.920(d) (SSI)*. The ALJ concluded that Plaintiff possesses the residual functional capacity to perform her past relevant work. *20 C.F.R. § 404.1520(e)(DIB); 20 C.F.R. § 416.920(e)(SSI)*.

This court's review function is extremely limited. The court must determine whether the record as a whole contains substantial evidence to support the Commissioner's decision, taking into account whatever in the record fairly detracts from its weight. *42 U.S.C. § 405(g); Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989); *see also, Baugus v. Secretary of Health and Human Services*, 717 F.2d 443, 445 (8th Cir. 1983); *McMillian v. Schweiker*, 697 F.2d 215, 220 (8th Cir. 1983). The court must accept the agency's factual determinations and reasonable inferences drawn from them if the record provides substantial evidence to support the findings and inferences. *Russell v. Secretary of H.E.W.*, 540 F.2d 353, 355 (8th Cir. 1976). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

There is a distinction between "substantial evidence" and "substantial evidence on the record as a whole."

> "Substantial evidence" is merely such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." "Substantial evidence on the record as a whole," however, requires a more scrutinizing analysis. In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Thus, the court

3

must also take into consideration the weight of the evidence in the record and
applying a balancing test to evidence which is contradictory.

*Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989).

Accordingly, this court's review is limited and is deferential to the agency. *See Ostronski v. Chater*, 94 F.3d 413, 415 (8th Cir. 1996). The administrative decision must be affirmed if substantial evidence in the record as a whole supports it. *Id.* However, the court may not "merely parse the record for substantial evidence supporting the [Commissioner's] decision," but must also "consider evidence in the record that detracts from the weight of the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992). The court must apply a balancing test to evidence which is contradictory. *Wilson v. Sullivan*, 886 F.2d at 175.

The medical record reveals that, at age 12, Plaintiff was diagnosed as suffering from a convulsive disorder manifested by motor seizures. (T. 189-90) Since diagnosis, Plaintiff has experienced occasional major motor seizures and more frequent complex partial seizures. (T. 156-57; 164-66) Since diagnosis, Plaintiff has regularly taken Dilantin, Depakote and Neurontin. (T. 149, 154, 156-57, 160, 164-66, 171, 178, 189-90)

Since her childhood, Plaintiff's treating neurologist has been W.L. Griggs, M.D. (T. 153-91) Treatment records reflect a regular course of treatment by Dr. Griggs from 1990 through January, 1999, at which time Dr. Griggs apparently temporarily retired. (T. 156-57) From June 10, 1999 through December 16, 1999, she was treated by Glenn E. Marshall, M.D. (T. 150-147) Beginning in February, 2000, Plaintiff returned to the care of Dr. Griggs. (T. 156) On February 24, 2000, Dr. Griggs summarized:

> I followed her [Plaintiff] from May of 1990 until January of 1999 with a seizure
> disorder, which is manifested by major motor seizures and complex partial seizures.

AO 72A
(Rev. 8/82)

> She was on reasonably good control with Dilantin for many years, but then began to breakthrough with complex partial seizures. ... She has been put on Neurontin as monotherapy. She has continued to have occasional complex partial seizures. Last Sunday in church she had a major motor seizure; her first out in public. This was quite disconcerting to her and she came back to see me. ...
>
> ... Her seizural episodes have been as such that there were momentary lapses of consciousness. She could tell something was coming on. It was very hard for her to describe to me exactly what the episode was like, but it was followed by an unawareness of what was going on around her. Major motor seizures are typical grand mal seizures.

(T. 156)

On May 6, 2003, Dr. Griggs noted that Plaintiff reported a seizure occurring on March 19, 2003 and May 1, 2003, followed by several complex partial seizures. He noted that Plaintiff had adjusted the dosage of her Dilantin and Neurontin. Dr. Griggs stated that he intended to get a blood level of the Dilantin and Neurontin so that he could better advise as to dosage. He asked to see her again in three months or before, if needed. (T. 134)

The May 6, 2003 note is the last record of medical treatment or consultation with respect to Plaintiff's seizure disorder.

On April 5, 2004, Dr. Griggs completed a Social Security "Seizures Residual Functional Capacity Questionnaire." (T. 193- 197) Dr. Griggs' handwriting is illegible in large part making it extremely difficult to interpret his responses. The doctor clearly states, however, that Plaintiff suffers from grand mal and complex partial seizures, experiencing four complex partial seizures per day and experiencing seven such seizures on April 4, 2004. (T. 193) It is noted that such seizures last "seconds," (T. 193) and that, during and immediately after the seizures, it is necessary that Plaintiff's glasses be removed, tight clothing loosened, the area around her cleared of sharp objects, and, that following the seizure, she should be turned on her side. (T. 194) He

5

notes that Plaintiff's daily activities are interfered with completely during the seizures and for minutes afterwards. (T. 194)

Plaintiff testified that, as of the date of the hearing, she had not seen Dr. Griggs recently and that she did not see anyone else for her seizure disorder. She stated that when she experiences a seizure, she notifies Dr. Griggs. (T. 123)

According to Plaintiff, she has experienced three types of seizures: occasional nocturnal grand mal seizures, occurring once every three weeks; "staring spells"; and, periods of confusion, occurring several times per day. (T. 232-33)

Plaintiff testified that she has a history of motor vehicle accidents brought on by seizures. (T. 229) The medical record contains notations of motor vehicle accidents in 1998 and 1999. (T. 164-66, 169) Plaintiff testified that she was involved in a motor vehicle accident in July, 2002, which she testified was caused by the onset of a seizure. (T. 227) As a result of the accident, Plaintiff suffered several minor injuries including cuts and bruises. (T. 130)

Plaintiff was involved in a motor vehicle accident in March, 2003 in which she sustained injuries including a displaced fracture of her right elbow. (T. 128-31)

Plaintiff's stepmother, Rhonda Hogue, testified that she sees Plaintiff once or twice per week. (T. 240) She stated that she last saw Plaintiff experience a grand mal seizure following Plaintiff's motor vehicle accident in 2003. (T. 241) Ms. Hogue further testified that within two to three weeks prior to the hearing, she had also observed the other types of seizure activity. (T. 242)

From a thorough review of the record, it is concluded that the ALJ failed to adequately develop the record. First, as noted above, Dr. Griggs' handwriting in the "Seizures Residual

6

Functional Capacity Questionnaire," is, to a great extent, illegible. (T. 193-97) Neither the ALJ or the court should be required to struggle with, and finally guess, at the words set forth in the form. "... illegibility of important evidentiary material can warrant a remand for clarification and supplementation." *Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir. 1990), *citing Cutler v. Weinberger*, 516 F. 2d 1282, 1285 (2d Cir. 1975)(illegible medical reports provide reviewing court with no way to determine whether the Secretary fully understood the medical evidence before him). Further, the ALJ's duty to develop the record fully and fairly includes assuring that the ALJ is provided with legible copies of medical records. *Id.*

Development of the record is also required because of the questions raised by the responses of Dr. Griggs, which the undersigned is able to understand. Specifically, Dr. Griggs states, in the "Seizures Residual Functional Capacity Questionnaire," that Plaintiff experiences four complex partial seizures per day and that she last experienced such episodes on April 4, 2004, when she suffered seven such events. (T. 193) However, the record contains no corresponding medical treatment notes or reports from Dr. Griggs documenting examination or treatment of Plaintiff after May 6, 2003. (T. 134)

Clearly, the source of Dr. Griggs' information and the basis upon which he opines that Plaintiff is subject to as many as four complex partial seizures per day, should be developed.

Furthermore, the hypothetical question upon which the VE relies in providing his opinion that Plaintiff can return to her past relevant work, omits any reference to Plaintiff's being subject to four seizures per day. Nor does the hypothetical contain reference to the impact of these seizures upon Plaintiff, i.e. confusion, exhaustion, irritability, severe headache and muscle strain (T. 194), or the actions which must be taken by others to deal with Plaintiff's seizure. (T. 245-46)

7

The hypothetical question posed to the vocational expert "must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." *Newton v. Chater*, 92 F.3d 688, 694-95 (8th Cir. 1996)(where a claimant's limitations are omitted from the hypothetical question, the expert does not base his opinion on the full extent of the claimant's limitations and his testimony can not constitute substantial evidence to support the Commissioner's decision); *see also Howard v. Chater*, 255 F.3d 577, 581-82 (8th Cir. 2001)(testimony from a vocational expert based upon a *properly-phrased hypothetical* constitutes substantial evidence) (emphasis supplied).

We find that the hypothetical relied upon by the VE was not properly-phrased as failing to set forth all of Plaintiff's limitations.

**Conclusion:**

Having found that the record herein is insufficiently developed, as noted above, and that the hypothetical posed by the ALJ to the VE is inadequate, we conclude that the ALJ's decision in this case is not supported by substantial evidence in the record as a whole. Accordingly, we conclude that this matter must be reversed and remanded for further proceedings consistent with this opinion.

DATED this 9th day of September 2005.

*/s/Bobby E. Shepherd*
_____
HON. BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)